```
FILED
SEP 21 2021
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY              DEPUTY
```

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>ROBERT GOLDSMITH,<br><br>        Defendant. | Case No.: 3:20-cv-00087-BEN-KSC<br><br>**ORDER DENYING THE GOVERNMENT'S MOTION TO AMEND THE JUDGMENT**<br><br>[ECF No. 29] |

## I. INTRODUCTION

Plaintiff, the United States of America ("Plaintiff" or the "Government"), with the authorization of the Secretary of the Treasury, *see* 31 U.S.C. § 3711(g)(4)(C), and at the direction of the Attorney General of the United States, brings this action to collect from the Defendant, Robert Goldsmith ("Defendant" or "Mr. Goldsmith"), an outstanding civil penalty pursuant to 31 U.S.C. § 5321(a)(5) for failure to timely file Reports of Foreign Bank and Financial Accounts ("FBARs") for the 2008, 2009, and 2010 calendar years. First Amended Complaint, ECF No. 3 ("FAC") at 1,[1]

Before the Court is the Government's Motion to Amend Judgment (the "Motion"). ECF No. 19. The Motion was submitted on the papers without oral argument pursuant to

---

[1] Unless otherwise indicated, all page number references are to the ECF-generated page number contained in the header of each ECF-filed document.

Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure, No. 30. After considering the papers submitted, supporting documentation, and applicable law, the Court **DENIES** the Government's Motion.

## II.   BACKGROUND

A detailed factual and procedural history of this case is set forth in the Court's May 25, 2021 Order granting summary judgment in the Government's favor in *United States v. Goldsmith*, --- F. Supp. 3d ---, No. 3:20-cv-00087-BEN-KSC, 2021 WL 2138520, at **1-6 (S.D. Cal. May 25, 2021). On May 26, 2021, in accordance with that order, the Clerk of the Court entered judgment in favor of Plaintiff, the United States of America, in the amount of $309,453.48, consisting of (1) $273,846.00 in penalties authorized by 31 U.S.C. § 5321(a)(5)(C)-(D) for willful violations of Mr. Goldsmith's obligation to report foreign accounts during the 2008, 2009, and 2010 tax years; (2) $30,520.70 in late payment penalties authorized by 31 U.S.C. § 3717(e)(2); and (3) $5,086.78 for pre-judgment interest authorized by 31 U.S.C. § 3717(a)-(d). *See* Judgment, ECF No. 28. The Clerk also noted that Plaintiff would recover post-judgment interest pursuant to 28 U.S.C. § 1961 from the date of judgment until the judgment is paid in full. 28 U.S.C. § 1961(a). *See id.*

On June 23, 2021, the Government timely filed a Motion to Amend the Judgment. *Compare* Fed. R. Civ. P. 59(e) (requiring a motion to amend a judgment to be filed no later than 28 days after the entry of judgment) *with* Motion, ECF No. 29-1 ("Mot."). Mr. Goldsmith never opposed the Motion. However, on July 26, 2021, Mr. Goldsmith filed a Notice of Appeal. ECF No. 31. On July 30, 2021, the Ninth Circuit issued an order that Mr. Goldsmith's Notice of Appeal was ineffective until the Court disposes of the Government's outstanding Motion to Amend the Judgment.[2] ECF No. 34.

## III.   LEGAL STANDARD

Because "specific grounds for a motion to amend or alter are not listed in [FRCP

---

[2]   Where a party files a motion to amend a judgment before a notice of appeal has been filed, as was the case here, a subsequently filed Notice of Appeal becomes effective on the day the Court enters the order disposing of the motion to amend the judgment. FED. R. CIV. P. 58(e), 59(e); *see also* FED. R. APP. P. 4(a)(4)(A)(iv).

-2-

59(e)], the district court enjoys considerable discretion in granting or denying the motion." *See, e.g., McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1, 1256 (9th Cir. 1999) ("The district court therefore did not abuse its discretion in denying reconsideration."); *see also Palo Alto Town & Country Vill., Inc. v. Deutsche Lufthansa A.G.*, 91 F. App'x 550, 551 (9th Cir. 2004) (affirming the district court's decision because it "did not abuse its discretion in denying Town & Country's motion to alter or amend the judgment" where the "[e]vidence to support its 'final determination' argument was available to Town & Country at the time of summary judgment, and thus [could not] qualify 'as newly discovered evidence'"). However, amendment of judgment qualifies as reconsideration of a judgment after its entry, which is an "extraordinary remedy, to be used sparingly." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

A court may find it appropriate to amend a judgment where "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009) (internal citations omitted). "Clear error occurs when 'the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Importantly, a "Rule 59(e) motion may not be used to 'raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Rishor v. Ferguson*, 822 F.3d 482, 492 (9th Cir. 2016).

In reviewing a motion to amend judgment following a grant of summary judgment, courts can consider the record available at the time the Court granted summary judgment. *Palo Alto*, 91 F. App'x at 551; *see also Lippi v. City Bank*, 955 F.2d 599, 604, 614 (9th Cir. 1992) (affirming the district court's decision declining to (1) enter the judgment in the form sought by the trustee or (2) amend or alter the judgment, "indicating its view that the issues of recovery against the remaining defendants had been decided conclusively at summary

judgment"). Denial may be appropriate where the evidence relevant to amending a judgment was available "at the time of summary judgment, and thus cannot qualify as 'newly discovered evidence.'" *Palo Alto*, 91 F. App'x at 551; *see also Lippi*, 955 F.2d at 604 (finding that because "the district court properly declined to consider supplemental materials filed by the trustee after the hearing on the summary judgment motion, we do not consider those materials in reaching our decision").

## IV. DISCUSSION

The Rolling Stones said it best: "You can't always get what you want." In this case, however, the Government got exactly what it wanted. The Court awarded the Government the exact sum of damages it requested in not just the Government's Complaint but also its Motion for Summary Judgment and Reply Brief. Nonetheless, the Government now seeks increased damages.

The Government advances various reasons that the Court should amend the Judgment even though (1) the Court awarded the Government the amount prayed for and (2) the deficiencies in the Judgment were due to the Government's failure to provide the Court with the information it needed to award the Government the increased damages it now seeks. The Government argues the Court's judgment qualifies as a clear error of law, warranting amendment of the judgment, for three reasons: First, it contends that the Judgment "does not clarify that judgment is [being entered] against Robert Goldsmith." Mot. at 3:10-11; 3:23-4:2. Second, it argues that "the Judgment does not state that statutory penalties continue to apply post-judgment." Mot. at 3:9-10. Third, it contends that "[n]either the Court's Order nor the Judgment includes the full amount of pre-judgment interest and penalties in the computation of the amount due as of the judgment date." *Id.* at 3:7-9. The Government argues "[c]orrecting these issues will prevent manifest injustice by awarding the United States the accruals to which it is statutorily entitled and by allowing [it] . . . to request and record an abstract of judgment, which will protect the United States' interest against other creditors of the defendant, Robert Goldsmith." *Id.* at 4:5-9.

The May 26, 2021 judgment (the "Judgment") specified as follows:

> Judgment [is entered] in favor of Plaintiff, the United States of America, in the amount of $309,453.48, consisting of (1) $273,846.00 in penalties authorized by 31 U.S.C. § 5321(a)(5)(C)-(D) for willful violations of Mr. Goldsmith's obligation to report foreign accounts during the 2008, 2009, and 2010 tax years; (2) $30,520.70 in late payment penalties authorized by 31 U.S.C. § 3717(e)(2); and (3) $5,086.78 for pre-judgment interest authorized by 31 U.S.C. § 3717(a)-(d). Plaintiff shall also recover post-judgment interest pursuant to 28 U.S.C. § 1961 from the date of judgment until the judgment is paid in full. 28 U.S.C. § 1961(a).

Judgment, ECF No. 28 (emphasis added). As outlined below, the Court finds the Government's three grounds for amending the Judgment show neither a clear error of law nor manifest injustice. Thus, the Court **DENIES** the Motion to Amend the Judgment.

### A.   Naming of Mr. Goldsmith

The Government "seeks to amend the judgment to make clear . . . that judgment is being entered against Robert Goldsmith." Mot. at 2:28-3:3. The Court finds this argument to be a non-issue. First, the Court's order granting summary judgment and directing the Clerk of the Court to enter judgment in favor of the Government does reference Mr. Goldsmith by name. See Order, ECF No. 27 ("SJ Order") at 72-73, ¶¶ 1-3. Second, as shown above, the Judgment clearly states that judgment is entered "in favor of Plaintiff, the United States of America . . . for willful violations of Mr. Goldsmith's obligation to report foreign accounts during the 2008, 2009, and 2010 tax years." See Judgment, ECF No. 28. There are only two parties in this case: Plaintiff, and Mr. Goldsmith, the only defendant. Even if the Judgment does not spell out that it is entered against "Defendant Robert Goldsmith," it is clear from the fact that Judgment is entered in favor of "Plaintiff, the United States of America," that the Judgment would be against Mr. Goldsmith, the only other party in this case. Cf. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001). Thus, the Court does not find the failure of the Judgment, which does reference Mr. Goldsmith by name, to spell out that it is entered against Mr. Goldsmith to qualify as error justifying amending the Judgment after its entry.

### B.   Post-Judgment Amounts

The Government also argues that the Judgment fails to specify that statutory penalties continue to apply post-judgment. Mot. at 3:9-10. It asks the Court to "amend the judgment entered in this matter at ECF No. 28 to reflect the amount due and to state that in addition to pre-judgment interest pursuant to 31 U.S.C. § 3717 and post-judgment interest pursuant to 28 U.S.C. § 1961(a) that the defendant Robert Goldsmith is also liable for late-payment penalties pursuant to 31 U.S.C. § 3717(e)(2) until the debt is paid in full." *Id.* at 1:17-24. However, the Judgment clearly states that "Plaintiff shall also recover post-judgment interest pursuant to 28 U.S.C. § 1961 from the date of judgment until the judgment is paid in full." *See* ECF No. 28. Thus, it clearly provides for post-judgment interest. The Government's Motion for Summary Judgment asked for the following:

> [T]he United States requests that the Court grant it summary judgment on the issue of Defendant's willfulness and a money judgment as civil penalties under 31 U.S.C. § 5321(a)(5) . . . along with all non-payment related penalties under 31 U.S.C. § 3717(e)(2) and interest that accumulate between April 27, 2020 and the date of judgment, plus post judgment interest under 28 U.S.C. § 1961, and **any penalties according to law, from the date of judgment until the judgment is paid in full**.

Mot. at 23:7-18 (emphasis added); *see also* Reply, ECF No. 21 (requesting identical relief including "post-judgment interest under 28 U.S.C. § 1961"); First Amended Complaint, ECF No. 3 (failing to request post-judgment relief pursuant to 31 U.S.C. § 3717(e)(2)).

The Government sought five types of penalties in its motion for summary judgment. First, it sought statutory penalties in the amount of fifty percent (50%) of the balance in the account on June 30th of the reporting year for which a FBAR was due. *See* 31 U.S.C. § 5321(a)(5)(C). Second, it sought late payment penalties pursuant to 31 U.S.C. § 3717(e)(2), which allows "[t]he head of an executive, judicial, or legislative agency," like the Secretary of the Treasury, to "assess on a claim owed by a person . . . a penalty charge of not more than 6 percent a year for failure to pay a part of a debt more than 90 days past due." *See also United States v. Garrity*, No. 3:15-CV-243(MPS), 2019 WL 1004584, at

*9 (D. Conn. Feb. 28, 2019), *appeal withdrawn,* No. 19-1145, 2019 WL 3384830 (2d Cir. July 23, 2019) (noting that "[f]ederal agencies must assess a late payment penalty 'of not more than 6 per cent per year for failure to pay part of a debt more than 90 days past due'"); 31 C.F.R. §§ 5.5(a), 901.9(d) (noting that "agencies shall charge a penalty, pursuant to 31 U.S.C. 3717(e)(2), not to exceed six percent a year on the amount due on a debt that is delinquent for more than 90 days," which "**shall accrue from the date of delinquency**") (emphasis added). Third, it sought pre-judgment interest, pursuant to 31 U.S.C. § 3717(a)-(d), which allows the Secretary of the Treasury, to "charge a minimum annual rate of interest on an outstanding debt . . . equal to the average investment rate for the Treasury tax and loan accounts for the 12-month period ending on September 30 of each year, rounded to the nearest whole percentage point." *See also* 31 C.F.R. § 5.5(a) ("Interest shall be charged in accordance with the requirements of 31 U.S.C. 3717(a)."); 31 C.F.R. § 901.9(b)(1) (providing that "[i]nterest shall accrue from the date of delinquency, or as otherwise provided by law"). This "[i]nterest does not compound, 31 C.F.R. § 901.9(b)(2), and it does not accrue on late payment penalties, 31 U.S.C. § 3717(f)." *Garrity,* 2019 WL 1004584, at *9. Rather, "[i]nterest and late payment penalties begin to accrue on the day the assessment is first mailed to the debtor." *Id.* Fourth, the Government sought post judgment interest under 28 U.S.C. § 1961, which allows "[i]nterest . . . on any money judgment in a civil case recovered in a district court," which is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Fifth, the Government sought "any penalties according to law, from the date of judgment until the judgment is paid in full." Motion, ECF No. 19-1 at 23:7-18.

Other courts have awarded late-payment penalties until the FBAR penalty is paid in full. *See, e.g., United States v. Kahn,* No. 17-cv-7258-KAM-VMS, 2019 WL 8587295, at *12 (E.D.N.Y. Sept. 23, 2019), *aff'd,* 5 F.4th 167 (2d Cir. 2021) ("The late-payment penalties and interest will continue to accrue until the FBAR penalty is paid."); *United*

*States v. Shemesh*, No. 20-cv-16305-KM-ESK, 2021 WL 3706735, at *4 (D.N.J. Aug. 19, 2021) ("The post-judgment interest on the FBAR penalty assessment shall accrue pursuant to 28 U.S.C. § 1961(a) and post-judgment late-payment penalties shall accrue pursuant to 31 U.S.C. § 3717(e)(2) and 31 C.F.R. §§ 5.5(a) and 901.9, until the judgment is paid in full."). For instance, in *United States v. Garrity*, the District Court of Connecticut entered judgment in favor of the Government without specifying an amount after the jury found the defendant had willfully failed to file a FBAR in violation of 31 U.S.C. § 5314. 2019 WL 1004584, at *1. The Government later filed a motion to amend the judgment to include a civil penalty of $936,691.00 plus interest and a late payment penalty, while the defendant filed a motion to reduce the judgment, arguing the maximum civil penalty was $100,000.00. *Id.* The *Garrity* court granted the Government's motion to amend the judgment while denying the defendants' motion to reduce the judgment. *Id.* In granting the Government's motion, it ordered that "[t]he late payment penalty and interest will continue to accrue until the FBAR penalty is paid." *Id.* It also directed the Clerk of the Court to "enter judgment for the Plaintiff in the total amount of $1,330,460.50, consisting of the civil penalty of $936,691, interest of $56,252.78, and a late payment penalty of $337,516.72." The Amended Judgment in that case stated "that judgment is entered in favor of the plaintiff and against the defendants in the total amount of $1,330,460.50, consisting of the civil penalty of $936,691, interest of $56,252.78, and a late payment of $337,516.72." *Id.* at ECF No. 211. Thus, even the amended judgment in *Garrity* did not include a clause saying that "statutory penalties accrue post judgment."

Here, the Government's Motion for Summary Judgment asked for (1) all non-payment related penalties under 31 U.S.C. § 3717(e)(2) and interest that accumulate between April 27, 2020 and the date of judgment," which the Court awarded; (2) post judgment interest under 28 U.S.C. § 1961, which the Court also awarded; and (3) "any penalties according to law, from the date of judgment until the judgment is paid in full." Mot. at 23:7-18. The Court did not award this last general subset included in the Government's request because it had already awarded the specific penalties the

Government had asked for under 31 U.S.C. § 3717(e)(2) as well as post-judgment interest. The Government also failed to address what other "penalties according to law" it should receive in its briefing. Thus, the Court **DENIES** the Government's Motion on this basis as well. *See, e.g., Palo Alto*, 91 F. App'x at 551 (noting that courts may deny a motion to amend a judgment where the evidence relevant to amending a judgment was available "at the time of summary judgment, and thus cannot qualify as 'newly discovered evidence'").

### C. Pre-Judgment Interest

In the Court's May 25, 2021 Order granting summary judgment, it explicitly noted, when awarding the Government the full amount of damages it requested, that "[u]nfortunately, the Government provide[d] the Court with no information whatsoever as to how [the] damages [it sought] were calculated, including but not limited to (1) the calculations for the penalty, (2) how the late payment penalty was calculated, and (3) how the pre-judgment interested was calculated." SJ Order at 68:12-18. This left "the Court guessing whether interest was calculated using the correct dates or applying the correct interest rates." *Id.* However, because the Court's own calculations indicated the damages sought were far below the amount the Government could have sought, the Court found it appropriate to enter judgment in the amount requested by the Government. *Id.* The Government acknowledges that the Court's Order applied the correct statutes and granted its requests for penalties "in substance," but it also acknowledges that the Court "struggled to discern how the United States calculated the amounts requested" due to its failure to provide that information. *See* Mot. at 2:16-17, 3:22-23 (citing SJ Order at 70-71 and ECF No. 28). Now, the Government contends that "[b]ecause the Court ruled that pre-judgment interest and late payment penalties should be granted in this case, the United States now moves to amend the Order and Judgment to include the additional interest and penalties that accumulated between April 27, 2020 and judgment being entered on May 26, 2021." Mot. at 2:15-18. As relates to prejudgment interest, the Government's Motion for Summary Judgment asked for the following:

> **[T]he United States requests that the Court grant it** summary judgment on the issue of Defendant's willfulness and **a money judgment as civil penalties under 31 U.S.C. § 5321(a)(5)** for his willful failure to report his relationship with Basler Kantonalbank, for the 2008, 2009, and 2010 years, in the amount of $309,453.48 as of April 27, 2020 (which includes, in addition to the FBAR penalty assessments of $273,846.00, a late payment penalty imposed under 31 U.S.C. § 3717(e)(2) of $30,520.70 and pre-judgment interest of $5,086.78) **along with all non-payment related penalties under 31 U.S.C. § 3717(e)(2) and interest that accumulate between April 27, 2020** and the **date of judgment** . . .

Motion, ECF No. 19-1 at 23:7-18 (emphasis added); *see also* Reply, ECF No. 21; FAC. The Government states that "the reason that the amounts sought by the government were lower than the amounts authorized by statute was because they were calculated only as of April 27, 2020, not as of the ultimate judgment date, which was unknown to the United States at the time it filed its motion for summary judgment." Mot. at 2:21-24. However, April 27, 2020 has no significance to this case. There are no docket entries showing any filings on this date. Rather, the Government filed its Motion for Summary Judgment approximately nine months later, on February 1, 2021, and provides no explanation as to why it neither (1) provided current calculations as of the date of filing its motion nor (2) indicated how it arrived at is calculations, which would have allowed the Court to compute the amounts owed from the date the Government filed its motion for summary judgment up until the date of judgment. In fact, had the Government simply asked for penalties up until the date of judgment and provided the Court with the calculations it wanted the Court to use, the Court could have awarded penalties through the date of judgment (provided it approved of the Government's calculations).

The Government acknowledges that the Court used the correct date of delinquency (*i.e.*, the June 27, 2018 date of the Government's demand for payment). *See* Mot. at 4:14-18 (citing SJ Order at 70). It also agrees that (1) late payment penalties **begin accruing** only after ninety (90) days following the date of delinquency, which in this case, would be September 25, 2018, *see* Mot. at 4:14-18; SJ Order at 70:17-18, and (2) "[i]nterest is

provided for in 31 U.S.C. § 3717(a)(1), which in this case is 1% annually," *see* Mot. at 4:19-20 (citing Order, ECF No. 27 at 71). However, the Government correctly points out that the Court inadvertently calculated penalties from the date they began accruing (*i.e.*, ninety (90) days after the demand for payment) rather than the date of delinquency. Mot. at 4:14-27.[3] Nonetheless, the Court's order stated that it calculated the penalties due solely for the purpose of ensuring the Government was not requesting penalties in excess of those allowed under the law but ultimately awarded the Government penalties based on its request, rather than the amount recoverable under the law. Thus, any error in the Court's calculation is harmless given the judgment was based on the Government's requested penalties rather than the Court's calculations. *See, e.g., Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 534 (9th Cir. 2011) (noting that the Ninth Circuit will only reverse the district court if its ruling was prejudicial and would have warranted a different judgment).

In addition to arguing the Court used the wrong date of delinquency, the Government also argues that the Court should award it additional penalties and interest from April 27, 2020 (the date used by the Government in its own motion for summary judgment) through the date of entry of judgment. The Government acknowledges that in light of its failure to provide calculations, "the Court correctly noted[ ] the interest due for that period is the product of (a) the number of years that passed between when the demand was made and judgment, 1064/365 (i.e.[,] number of days in the period divided by the number of days in a year), (b) the annual interest rate, 1%, and (c) the amount of the assessment ($273,846),

---

[3] The Government elaborates that "[t]he number of days used in the Court's Order is different [than the Government's] likely due in part to the Court not counting the ninety days during which delinquent payments are not due, but penalties nevertheless accrue." Mot. at 5:2-6. This mistake arose because 31 U.S.C. § 3717(e)(2) allows "a penalty charge of not more than 6 percent a year for failure to pay a part of a debt ***more than 90 days past due***." 31 U.S.C. § 3717(e)(2) (emphasis added). However, 31 C.F.R. § 5.5(a) requires that interest and penalties be assessed "in accordance with the provisions of 31 U.S.C. 3717 and 31 CFR 901.9, on Treasury debts." 31 C.F.R. § 901.9(d), in turn, clarifies that even though a penalty does not become due until the debt has not been paid for more than ninety (90) days, that "penalty, pursuant to 31 U.S.C. 3717(e)(2), . . . ***shall accrue from the date of delinquency***."

-11-

for a total of $7,982.80." Mot. at 5:6-11; *see also* SJ Order at 71:18-19 (noting that "[b]ecause payment was not received, interest accrued at the rate one percent (1%) as of June 30, 2018"). As shown below, applying a one percent (1%) interest rate to the penalties sought by the Government resulted in pre-judgment interest of $3,185.10 for the 2008 tax year, $2,136.38 for the 2009 tax year, and $1,806.02 for the 2010 tax year, for a total of $7,127.50 for all three years:

| | Pre-Judgment Interest: | | | | | | |
|---|---|---|---|---|---|---|---|
| Year: | Penalty for Willful Violations: | Date Letter Was Mailed: | Days Since: | Annual Interest (1%): | Daily Interest Rate: | Actual Interest Accrued: | Interest Sought by Plaintiff: |
| 2008 | $122,375.00 | 6/27/2018 | 950[4] | $1,223.75 | $3.3527 | $3,185.10 | Unknown |
| 2009 | $82,082.00 | 6/27/2018 | 950 | $820.82 | $2.2488 | $2,136.38 | Unknown |
| 2010 | $69,389.00 | 6/27/2018 | 950 | $693.89 | $1.9011 | $1,806.02 | Unknown |
| TOTAL: | $273,846.00 | | | | | $7,127.50 | $5,086.78 |

SJ Order at 71:19-28.

The Government calculates the pre-judgment interest as follows:

| Year | Civil Penalty Assessed | × | Interest Rate | × | (Days Since Demand | ÷ | Days in a Year) | = | Total Pre-Judgment Interest Due |
|---|---|---|---|---|---|---|---|---|---|
| 2008 | $122,375.00 | × | 1% | × | 1,064 | ÷ | 365 | = | $3,567.32 |
| 2009 | $82,082.00 | × | 1% | × | 1,064 | ÷ | 365 | = | $2,392.74 |
| 2010 | $69,389.00 | × | 1% | × | 1,064 | ÷ | 365 | = | $2,022.74 |
| Total | $273,846.00 | × | 1% | × | 1,064 | ÷ | 365 | = | $7,982.80 |

Mot. at 5:11-17. Thus, the Government now asks the Court to award the $2,896.02

---

[4] The Court used an Excel formula to calculate "Days Since" column (*i.e.*, the number of days since the date the delinquency letter was mailed) up through the date the Court calculated the Government's damages. The Court updated Excel on the date it entered the Order to ensure the "Days Since" formula would auto-populate as of the date the Court entered its order. It is unclear why Excel showed the "Days Since" as 950 rather than 1,063 given the number of days between June 27, 2018 and May 26, 2021 is 1,063. In any event, the Court's use of a date calculator confirms that neither the Court's 950 days nor the Government's use 1,064 days is correct. *See* Mot. at 5:1-2 (providing that "[t]here were 1064 days from June 27, 2018 to the date of entry of the judgment on May 26, 2021").

-12-

difference between the amount it requested and was awarded ($5,086.78), and the amount it contends it was owed as of the date of entry of judgment ($7,982.80).

Next, the Government correctly notes that "the late payment penalty due for that period is the product of (a) 1,064/365, (b) the annual penalty rate of 6%, and (c) the assessment ($273,846), for a total of $47,896.79." Mot. at 5:18-20. As shown below, a six percent (6%) penalty sought by the Government amounts to $15,489.66 for 2008, $10,389.56 for 2009, and $8,782.94 for 2010, for a total of $34,662.15:

| Late Payment Penalty | | | | | | | |
|---|---|---|---|---|---|---|---|
| Year: | Penalty for Willful Violations: | 6% Annual Penalty: | Daily Penalty Amount: | Date Penalty Began to Accrue: | Days Since: | Penalty Due (Daily Penalty x Days Since Penalty Accrued): | Late Payment Penalty Sought by IRS: |
| 2008 | $122,375.00 | $7,342.50 | $20.12 | 9/25/2018 | 770[5] | $15,489.66 | Unknown |
| 2009 | $82,082.00 | $4,924.92 | $13.49 | 9/25/2018 | 770 | $10,389.56 | Unknown |
| 2010 | $69,389.00 | $4,163.34 | $11.41 | 9/25/2018 | 770 | $8,782.94 | Unknown |
| TOTAL: $273,846.00 | | | | | | $34,662.15 | $30,520.70 |

SJ Order at 70:18-28.

The Government calculates the penalties it should be owed in its Motion to Amend the Judgment as follows:

| Year | Civil Penalty Assessed | × | Interest Rate | × | (Days Since Demand | ÷ | Days in a Year) | = | Total Pre-Judgment Interest Due |
|---|---|---|---|---|---|---|---|---|---|
| 2008 | $122,375.00 | × | 6% | × | 1,064 | ÷ | 365 | = | $21,403.89 |
| 2009 | $82,082.00 | × | 6% | × | 1,064 | ÷ | 365 | = | $14,356.48 |
| 2010 | $69,389.00 | × | 6% | × | 1,064 | ÷ | 365 | = | $12,136.42 |
| Total | $273,846.00 | × | 6% | × | 1,064 | ÷ | 365 | = | $47,896.79 |

Mot. at 5:20-28.

The Government now asks the Court to award the $17,376.09 difference between

---

[5] The Government argues that by using the date penalties became due (*i.e.*, September 25, 2018) rather than the date they began accruing (*i.e.*, the date of delinquency, or June 27, 2018), the Court undercalculated its penalties.

-13-

the amount it requested and was awarded ($30,520.70), and the amount it contends it was owed as of the date of entry of judgment ($47,896.79). However, the Court expressly noted in its Order that the Government sought penalties below the amount to which it was entitled: "Thus, the Court finds the actual late penalty owed or allowed by law ($34,662.15) exceeds the late payment penalty sought by the Government ($30,520.70), and as such, the penalty sought by the Government is appropriate." SJ Order at 71:1-3. To the extent the Government argues that the Court's calculations were incorrect because they used the wrong date for when the penalties began to accrue, the Court finds this does not warrant amendment because (1) the Court still awarded the Government the complete amounts requested in its moving papers and (2) the Government failed to provide any calculations to the Court. This information was available at the time the Government moved for summary judgment. Thus, the Government's request to amend the judgment on this basis does not warrant the extraordinary remedy of amendment after entry of judgment. *See, e.g., Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (denying a motion for reconsideration where "[t]he overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence'").

## V.     CONCLUSION

For the above reasons, the Court **DENIES** Plaintiff's Motion to Amend the Judgment.

IT IS SO ORDERED.

DATED:     September 20, 2021

_____
HON. ROGER T. BENITEZ
United States District Judge